UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 6:10-0370 |
| VERSUS | * | JUDGE HAIK |
| SHAWN A. JOLLIVETTE | * | MAGISTRATE JUDGE HILL |

REPORT AND RECOMMENDATION

Before the court is a Motion to Suppress filed by defendant, Shawn A. Jollivette ("Jollivette"). [rec. doc. 35]. The government filed Opposition. [rec. doc. 36]. An evidentiary hearing was held on the motion. Jollivette filed a post-hearing memorandum. [rec. doc. 39]. Based on the evidence adduced at the hearing and the applicable jurisprudence, it is **RECOMMENDED** that the motion to suppress be **DENIED.**

BACKGROUND

The defendant, Shawn A. Jollivette, was indicted on two firearms counts. Count 1 charges Jollivette with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); Count 2 charges Jollivette as being in possession of a stolen firearm in violation of 18 U.S.C. § 922(j). The firearm which forms the basis for these charges, is an AR-15 type semi-automatic assault rifle, which was discovered while deputies were searching for Jolivette in his residence pursuant to a valid arrest warrant. Jolivette seeks to have the rifle seized in connection with his arrest suppressed, arguing that it was obtained in violation of his Fourth Amendment rights. More specifically, Jollivette argues that the rifle was discovered through an illegal search, because the deputy who

found the rifle was not justified in looking under the mattress where the rifle was found. Specifically, Jollivette argues that because the search between the mattress and box springs did not constitute a cursory inspection of a place where a person may be found, that the seizure of the rifle is constitutionally invalid. Jollivette further argues that any statements he made regarding the assault rifle should also be suppressed, as Jollivette's questioning was not sufficiently attenuated from the allegedly illegal seizure of the rifle.

## LAW AND ANALYSIS

It is undisputed that Jollivette's arrest was pursuant to a valid arrest warrant. It is further undisputed, and was confirmed by the testimony of Lieutenant Dale Thomas, that the arresting deputies (Lt. Dale Thomas, Deputy Jeff Gary and Deputy Clint Campbell) believed that the address listed on the arrest warrant was where Jollivette lived. Accordingly, that is where the deputies went to arrest him.[1]

Additionally, the deputies spoke to Jollivette's landlord to confirm that Jollivette lived at the residence. The deputies also spoke with Jollivette's neighbors, who told the deputies that Jollivette had been there the night before and that they thought he was still at home. A woman who exited the trailer that morning, before the deputies entered, told the deputies that Jollivette was at home, in the back bedroom, and pointed to that location.

---

[1] While Jollivette testified that the officers broke in to the residence, all three of the arresting officers testified that they did not break into the home. Rather, the arresting officers testified that they entered the home, after knocking, with the consent of a female who had exited the residence, who advised that Jollivette was inside the residence, indicating that he was in the back bedroom where the assault rifle was found. Although not necessary for the proper disposition of this Motion, the undersigned finds the officers' testimony credible on this point.

Each of the deputies (Thomas, Gary and Campbell) testified as to their extensive experience in executing arrest warrants. They additionally each testified that it was not uncommon for fugitives to hide under a bed or between the mattress and box springs of a bed, and, accordingly, they routinely looked under beds and between box springs and mattresses when searching for a fugitive. In this case, while looking for Jollivette, Lieutenant Thomas entered the back bedroom in which the woman had indicated Jollivette could be found. Thomas lifted the mattress on the bed and discovered the rifle lying in plain view. He then secured the rifle on the top of the bed, described by Jollivette as a king size sleigh bed with both a "normal" box spring and mattress. After the rifle was found, Jollivette was found hiding inside an electric clothes dryer in the kitchen by another deputy.

After Jollivette was found by the deputies, Thomas ran the serial number on the rifle and determined that it had been stolen. The rifle was accordingly seized.

Agent Goldsmith of the Bureau of Alcohol, Tobacco and Firearms interviewed Jollivette at the jail where Jollivette was being held. After waiving his *Miranda* rights, Jollivette admitted that he bought the rifle, but denied knowing that the firearm was stolen. It is undisputed that Jollivette is a convicted felon.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Thus, the Fourth Amendment bars unreasonable searches and seizures. *Maryland v. Buie*, 494

U.S. 325, 331, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Accordingly, the purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *United States v. Garza*, 921 F.2d 59, 60 (5th Cir. 1991) *citing Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967).

The Supreme Court has held that an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is inside. *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In this case it is clear that the deputies had good reason to believe that Jollivette was inside the residence at time they entered the residence pursuant to the validly issued search warrant. The deputies had been told by the woman who emerged from the residence that Jollivette was inside and the dputies had also spoken with Jollivette's landlord and his neighbors to confirm that Jollivette lived at the residence and was likely at home. *See United States v. Route*, 104 F.3d 59, 62 (5th Cir. 1997) (adopting the "reasonable belief" standard as opposed to a probable cause standard to enter a residence armed with an arrest warrant).

The Supreme Court has held that when executing an arrest warrant, officers may "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334. While allowing protective

sweeps to ensure the safety of the arresting officers, the Supreme Court cautioned that such sweeps do not amount to "a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." *Id*. at 335. Any further searching requires "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334.

In *Buie*, the protective sweep occurred after the suspect had been taken into custody, as the officer was looking for other individuals who might still be in the house. *Id*. at 328. Accordingly, any further searching required "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334.

In this case, the rifle was found while the deputies were searching for Jollivette, *before* Jollivette was found and arrested by the deputies. As the Supreme Court noted in *Buie*, it is only *after* the suspect has been found that the justification for searching the residence disappears. *Id*. at 332-33. Therefore, because Jollivette was not in custody at the time the rifle was discovered, the deputies could justifiably continue "to search anywhere in the house that [Jollivette] might have been found . . . ." *Id.* at 330 *citing Payton*, 445 U.S. at 602-603; *see also United States v. Williamson*, 250 Fed.Appx. 532, 533 (4th Cir.

2007). The deputies simply used their experience to properly, in this case, decide where to look for Jollivette.

Jollivette argues, however, that the officers could not have reasonably believed that he would be found under the mattress because a cursory inspection of the bed did not indicate that a person could be hiding between the mattress and box spring. The deputies' testimony, which the Court finds credible, refutes this claim. Each of the deputies testified that they have, on numerous occasions, found fugitives hiding under a bed or between the mattress and box springs of a bed. Accordingly, based on their experience in executing arrest warrants, it was reasonable for them to look for Jollivette between the mattress and box springs.

Furthermore, Deputy Gary testified that he always looks for fugitives in these places, and, in this case, looked under the bed and mattress in the bedroom which he searched. Likewise, Lieutenant Thomas testified that he generally pulls up the mattress, and then the box spring, in order to look under the bed. He does this because it is safer than stooping down to look under the bed first.

In this case, contrary to the testimony of Jollivette, Thomas testified that there was enough clearance under the bed for a person to hide. Accordingly, he proceeded by pulling up the mattress and working his way down. The undersigned finds Thomas' testimony on this point credible, that his actions were entirely reasonable under the

circumstances, and that his actions were consistent with a cursory inspection of an area where Jollivette could be found.[2]

Indeed, courts have found that it is reasonable and constitutionally permissible for an officer to look under a mattress when looking for a fugitive and in the course of conducting a protective sweep. *See United States v. Williamson*, 250 Fed.Appx. 532, 533 (4th Cir. 2007) (looking for a fugitive); *United States v. King*, 2009 WL 1393572, *7 (E.D. Wis. 2009) (performing a protective sweep); *United States v. Lanier*, 285 Fed.Appx. 239, 242 (6th Cir. 2008) (looking for a fugitive and performing a protective sweep); *United States v. Bass*, 315 F.3d 561, 564 (6th Cir. 2002) (looking for a fugitive and performing a protective sweep); *see also United States v. Quigley*, 631 F.2d 415 (5th Cir. 1980) (holding a search under a mattress constitutional under pre- *Buie* jurisprudence).

Once lawfully inside a residence, an officer may seize contraband found in plain view. *Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) *citing Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). While Jollivette argues that the rifle was not in plain view because the officers exceeded the parameters of a lawful search, that argument is without merit in light of the above analysis.

---

[2]Jollivette was actually found in a clothes dryer. The Court finds it less likely that a fugitive could fit inside a clothes dryer than hide between a mattress and box springs.

Jollivette's additional argument, that the incriminating nature of the rifle was not apparent, is likewise without merit. The rifle was lawfully discovered and secured while the officers searched for Jollivette. The rifle was not seized until after it was determined that the rifle was stolen. As such, at the time of the seizure, the incriminating nature of the rifle was apparent. Accordingly, the seizure of the rifle passes constitutional muster.

Because there was no Fourth Amendment violation in connection with the discovery or seizure of the rifle, the exclusionary rule has no application. Accordingly, there is no basis for suppression of Jollivette's statements made to officers and agents after his arrest. *See Williamson*, 250 Fed.Appx. 532 at fn. 1.

For the above reasons, **IT IS RECOMMENDED** that the defendant's Motion to Suppress [rec. doc 35] be **DENIED.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either**

**the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

      THUS DONE AND SIGNED in Lafayette, Louisiana, April 13, 2011.

*[signature]*

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE